LAWRENCE (SILL v.). See Case No. 12,850.

LAWRENCE (STONE v.). See Case No. 13,-484.

LAWRENCE (STOYEL v.). See Case No. 13,-517.

LAWRENCE (THORP v.). See Case No. 14,-005.

---

## Case No. 8,145.

### LAWRENCE v. UNITED STATES.

[2 McLean, 581.] [1]

Circuit Court, D. Michigan. Oct. Term, 1841.

OFFICIAL BONDS — SUIT AGAINST SURETY — RECEIPTS OF POSTMASTER—JUDGMENT MORE THAN PENALTY OF BOND.

1. A transcript from the postoffice department, to show the indebtment of a postmaster, need not contain a full copy of his quarterly returns. In such return, the postmaster strikes the balance due by him, and this is sufficient to charge him.

2. Where the surety is charged with receipts, for postage, for a part of the quarter, the return for the full quarter is evidence, to show an average liability for a part of it.

3. A payment made, by a postmaster, of a greater sum than the receipts for the preceding

[1] [Reported by Hon. John McLean, Circuit Justice.]
15FED.CAS.—6

[1] [Reported by Hon. John McLean, Circuit Justice.]

quarter, should be applied as a credit for the quarter, as well before as after the date of the bond.

4. On a penal bond, a judgment can not be rendered beyond the penalty.

[Error to the district court of the United States for the district of Michigan.]

Mr. Frazer, for plaintiff.

Mr. Goodwin, Dist. Atty., for defendants.

OPINION OF THE COURT. This case is brought before this court, by a writ of error, to the district court. The action was brought against Lawrence, as security on a bond, in the penalty of two thousand dollars, given by Adams, as deputy postmaster, dated the 21st February, 1837. On the trial the district attorney offered a transcript, from the books of the postoffice department, showing the amount of the defalcation of the late postmaster. To the admission of this transcript, in evidence, the defendant objected—First. Because it does not purport to contain copies of the quarterly returns of the postmaster, but merely a statement of his indebtment. Second. Because it purports to contain a statement of the account of the postmaster, and an indebtment, on his part, anterior to the date of the bond.

And it is insisted that the court erred in permitting the transcript to be read, as evidence, and, also, in its instructions to the jury—First. By informing them that the whole of the transcript was evidence. Second. By charging the jury that they should apply the credit, of $708 69, under the date of 15th April, 1837, to the payment of the item on the debit side, of $699 24, being for the quarter of the 1st January, to the 31st March, 1837. Third. By instructing the jury that it was competent for the district attorney to apply said credit to a prior indebtment of said postmaster. Fourth. By charging the jury, if they found the balance due to exceed the penalty in the bond, they could find the penalty, and interest. Fifth. By rendering judgment for the penalty and interest, found by the jury.

The counsel for the plaintiff in error insists that the admission of this transcript in evidence, being in derogation of the common law, should strictly conform to the statute; and, in support of this position, a reference is made to the case of Smith v. U. S., 5 Pet. [30 U. S.] 300. In that case the court say, where copies are made evidence by statute, the mode of authentication required must be strictly pursued. Against the authentication of the transcript, in this case, there seems to be no valid objection. But, it may be admitted, that the body of the transcript must, substantially, conform to the statute.

The first question to be considered, is, the objection to the admission of the transcript, as evidence, because it does not purport to contain copies of the quarterly returns of the postmaster, but a statement of his indebtment. These quarterly returns consist, on the debit side, of the gross amount received for postages during the quarter; and, on the credit side, are entered the commissions of the postmaster, the incidental expenses, and some other items; which, being deducted from the amount on the debtor side, shows the amount due, by the postmaster, at the close of the quarter. And this balance is stated, by the postmaster, in his return. That this amount is stated in the transcript, as an indebtment against the postmaster, without enumerating the other items of the return, is the objection made. If this balance were struck, by the accounting officers of the postoffice department, from the items composing the quarterly return, the objection would be fatal. For, in a case like the present, it is not the action of the department which is to bind the department, but the judgment of the court and jury, on the evidence on which that action was founded. The balance, charged, was struck by the postmaster himself, and acknowledged by him, in his return, to be the amount of his indebtment. It does not, therefore, come within the rule, which requires the items in the original account to be certified, and not the balance ascertained by the accounting officers.

The next objection to the admission of the transcript, is, that it shows an indebtment of the postmaster anterior to the date of the bond. It is clear that the security can only be charged, for defalcations of the postmaster, subsequent to the date of the bond. But the bond bears date the 21st February, near the middle of the quarter, which commenced the 1st January, 1837, and ended the 31st March; and, as the postmaster is not required to keep an account of the receipt of postages, except the gross amount within the quarter, the sum received, from the date of the bond to the close of the quarter, can only be ascertained by an average estimate on the sum received during the quarter. To enable the jury to make this estimate, it was proper to admit the transcript, in evidence, which showed the amount of postages received for the quarter. And, in this view, the instruction of the court to the jury, that the whole of the transcript was relevant and proper evidence, which is objected to, was right. The second instruction, that the jury should apply the credit of $708 69, under date the 15th April, 1837, to the payment of the item of $699 24, on the debit side, is also objected to. The latter sum was the net amount of postages for the quarter. Payments are made by postmasters, either on the drafts of the department, or by deposits in some bank, as directed; and credits are given at the time of such payments or deposits. The above credit was given the 15th of April, and the question is, how it should be applied. That this sum included the postages received for the entire quarter, is apparent; and it is equally clear that it was properly applied, under the instruction of

the court, in discharge of postages received for the quarter, as well before as after the date of the bond. At the time of the payment, two weeks of the new quarter had expired, and the sum paid must have included a part, or the whole, of the postages received during that time. It is in this way that the excess of the payment, over the amount due for the preceding quarter, is accounted for. This was an application of the credit not only authorized, but required, from the face of the transcript. It can not be supposed that the postmaster paid the above sum in advance of the receipts of his office; nor is there any doubt as to the intent with which the payment was made by him, and received by the department. And, where this is the case, there is no occasion to refer to the general doctrine, as to the right of the one party, or the other, to make the application of the payment.

The two last exceptions to the charge, that the jury could find interest on the penalty of the bond, for which judgment was rendered, will be now considered. There is some contrariety in the authorities on this point. In the case of Lowe v. Peers, 4 Burrows, 2228, Lord Mansfield said: "There is a difference between covenants in general, and covenants secured by a penalty or forfeiture. In the latter case, the obligee has had his election. He may either bring an action of debt for the penalty, and recover the penalty; or, if he does not choose to go for the penalty, he may proceed upon the covenant, and recover more or less than the penalty, toties quoties." This point seems not to have been involved in that case; and it must be regarded, rather as a dictum by his lordship, than a solemn decision. But it is considered law by Espinasse, in the 2d volume of his Nisi Prius, 279. In the case of Lord Lonsdale v. Church, 2 Term R. 388, where a motion was made to stay proceedings, on the payment of the penalties of the two bonds, on which suit was brought, Justice Buller expressed dissatisfaction with the decision, in White v. Sealy, 1 Doug. 49, and cited Collins v. Collins, 2 Burrows, 820, and Holdipp v. Otway, 2 Saund. 106, where the interest, beyond the penalty of the bond, was recovered by way of damages. In Graham v. Bickham, 4 Dall. [4 U. S.] 149, 2 Yeates, 32, it was held that where the penalty is not in the nature of stated and ascertained damages, the injured party may recover beyond the penalty. That case was brought on a contract, for the transfer of stock, not under seal. The same doctrine was held in the case of Harris v. Clap, 1 Mass. 308. And in the case of U. S. v. Arnold [Case No. 14,469]. Mr. Justice Story says, "I think the true principle supported by the better authorities is, that the court cannot go beyond the penalty and interest thereon from the time it becomes due by the breach." The judgment in that case was affirmed on a writ of error, but the above point was not considered. [Arnold v. U. S.] 9

Cranch [13 U. S.] 104. In Martin v. Taylor [Case No. 9,166], the court say, "in an action of covenant, on an agreement under a penalty, the jury, in estimating the damages, are not bound to give the penalty only; but where the penalty is in the nature of liquidated damages, the stipulated sum must govern the jury in estimating damages." That damages may be recovered beyond the penalty is laid down in 4 Mass. 333; 7 Am. Com. Law, 244; 2 Am. Com. Law, 441; and Bank of U. S. v. Magill [Case No. 929].

There are many cases opposed to these decisions. In Brangwin v. Perrot, 2 W. Bl. 1190, a motion was made to pay the penalty of the bond, when Chief Justice De Grey observed, "This is really so plain a case that one knows not what to say to make it clearer. The bond ascertains the damages by consent of parties. In White v. Sealy, 1 Doug. 49, Buller concurred with Ashurst and Lord Mansfield that the defendants were liable only for the penalty. In the case of Tew v. Earl of Winterton, 3 Brown, Ch. 490, and in Knight v. Maclean, Id. 496, Lord Thurlow held that the penalty was the extent of the obligor's liability.

Afterwards, the king's bench, in Wilde v. Clarkson, 6 Term R. 303, decided that more than the penalty could not be recovered. Lord Kenyon said, "I cannot accede to the case of Lonsdale v. Church." The same principle was recognized in McClure v. Dunkin, 1 East, 436, and in Hefford v. Alger, 1 Taunt. 218; 2 Wash. [Va.] 143; Clark v. Bush, 3 Cow. 151; Fairlie v. Lawson, 5 Cow. 424; Goldhawk v. Duane [Case No. 5,511]. But the decision in the case of Farror v. U. S., 5 Pet. [30 U. S.] 385, is most authoritative on this court. That action was brought on a bond, in the penalty of thirty thousand dollars, given by Rector, and signed by the plaintiffs in error as sureties for the faithful performance of the duties as surveyor general. The jury found a verdict in favor of the United States for forty one thousand dollars, on which a judgment to recover the damages assessed was rendered.

The supreme court say, "It is perfectly clear that against the sureties a judgment cannot be rendered beyond the penalty to be discharged on payment of what is actually due; which, of course, can only be where it is a sum less than the penalty." That a release of the excess of the damages would not cure the form of the judgment so as to authorize its affirmance. This language cannot be misunderstood. It lays down, in express terms, that the judgment against the surety cannot exceed the penalty. And this equally excludes damages beyond the penalty, for interest or on any other ground. The rule which gives interest on the penalty from the breach of the condition would seem to be reasonable: but as this would make the judgment greater than the penalty, it would be in conflict with the above decision. And it seems to be impossible to avoid the pressure

of its authority. Where the condition of a penal bond is not for the faithful application of public moneys, but for the performance of other duties, public or private, the damages could be ascertained only by the amount of injury sustained. In such a case it would be difficult to apply the rule that interest shall be recovered on the penalty from the time of the breach, should the damages be assessed to that amount. And the propriety of a rule of but limited application may be doubted. Upon the whole, as the judgment of the district court on the bond, against the plaintiff in error was for a larger sum than the penalty, it must be reversed.